**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| GLORIA SANTIAGO-RIVERA<br><br>*Plaintiff*<br><br>vs.<br><br>HOSPITAL GENERAL MENONITA DE AIBONITO<br><br>*Defendant* | Civil No:<br><br>ACTION FOR:<br><br>**ADA**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

**TO THIS HONORABLE COURT:**

COMES NOW the Plaintiff, GLORIA SANTIAGO-RIVERA, through the undersigned attorney, and respectfully STATES, PRAYS and ALLEGES as follows:

**INTRODUCTION**

1. This is a civil action brought for disability discrimination pursuant the American with Disabilities Act, 42 U.S.C. § 12101 et. seq. ("ADA"); the Puerto Rico Employment Discrimination Statute, 29 P.R. Laws Ann. §§146 ("Law 100") and the Puerto Rico Law Against Discrimination of Disabled Persons, 1 P.R. Laws Ann. §§ 501 ("Law 44") and the Puerto Rico Law Against Unjustified Discharge of an Employee, 29 P.R. Laws Ann. §§ 185(a)("Law 80").

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §1331 since this action arises under laws of the United States. Subject matter jurisdiction over claims asserted under the laws of Puerto Rico is based upon supplemental jurisdiction pursuant to 28 U.S.C. §1367. The state claims are so related to the federal claims in this action that they form part of the same case or controversy

1

under Article III of the United States Constitution as provided under 28 U.S.C. §1367(a).

3. Venue lies properly in this Court pursuant to 28 U.S.C.A. § 1391(a)(2) because the acts herein complained of occurred within the Commonwealth of Puerto Rico.

## PARTIES

4. GLORIA SANTIAGO-RIVERA ("Plaintiff") is a natural person, citizen of the United States of America, and resident of the Commonwealth of Puerto Rico.

5. Upon information and belief, HOSPITAL GENERAL MENONITA DE AIBONITO ("Defendant") is an entity organized under the laws of the Commonwealth of Puerto Rico with legal capacity to sue and be sued.

## FACTS COMMON TO ALL CAUSES OF ACTION

6. In 1995, approximately, Plaintiff was first diagnosed with mayor depressive disorder, an incapacitated condition pursuant to American Disability Act (ADA) and Law 44.

7. In 2009 Plaintiff was partially hospitalized for 2 weeks at the CIMA clinic of Hospital Menonita de Aibonito (Defendant's facility) for mayor depressive disorder.

8. Plaintiff's condition of mayor depressive disorder substantially limits her from performing major life activities among which are the following: concentrate, thinking capacity, her mind often goes in blank or begins thinking about irrelevant matters, ability to take care of herself; carry out manual tasks in the house such as cooking and cleaning; uncontrollable desire to eat; and lack of sleep.

9. As a result of her mayor depressive disorder Plaintiff suffers from insomnia; lack of peace (anxiety); shaking of her hands, weakness and loss of physical strength to

even get out of bed and walk, altered sleeping patterns, excessive worries, irritable, isolated, panic attacks, low self-esteem, insecurities, muscular pains, cardiac arrest, sweating, erythema of her legs, with no strength to carry out house choirs and with a feeling to stay in bed all day, with feelings of guilt and despair. In light of Plaintiff's medical condition of mayor depressive disorder she is a qualified individual under the ADA. Plaintiff also has a record of suffering from mayor depressive disorder.

10. On March 13, 2007 Plaintiff began working for the Defendant as a graduate Nurse in the emergency department, where she worked for approximately 1 year.

11. Thereafter, Plaintiff worked for about another year in the labor department.

12. Since 2009 Plaintiff has worked as a Nurse at the intermediate intensive unit of Defendant's facilities.

13. Despite her incapacitating condition, throughout the years Plaintiff has been able to carry out her responsibilities as a Nurse with the Defendant at the intermediate intensive unit. Defendant was aware of Plaintiff's incapacitating condition since her partial hospitalization at Defendant's facility in 2009.

14. However, everything changed for Plaintiff ever since Ms. Efigenia La Santa ("La Santa") was named Plaintiff's supervisor in the summer of 2015. From the start La Santa began a pattern of harassment and hostile work environment against the Plaintiff. For instance, La Santa would discriminatory together with the Head Nurse evaluate Plaintiff's work and would constantly complain about Plaintiff's job performance. They would also refuse to assist Plaintiff when she requested their assistance.

15. Towards the end of 2015 La Santa falsely accused the Plaintiff of speaking negatively about La Santa with Plaintiff's prior supervisor, Evelyn Melendez.

16. Beginning in February of 2016 as a result of La Santa's discriminatory prerogative Plaintiff began to disproportionately suffer transfers - in comparison with other nurses - to other floors but particularly to the emergency room.

17. On March 28, 2016, La Santa summoned Plaintiff to her office to question her and to unjustifiably accuse her regarding the failure to administer a medication to a particular patient on March 24, 2016.

18. The order for medication for this particular patient was issued at 4:58 pm. of March 24, 2016, prior to Plaintiff beginning to work her schedule that day.

19. Prior to summoning Plaintiff to her office, La Santa was well aware of the identity of the nurse responsible for failing to administer the medication on March 24, 2016.

20. To Plaintiff's surprise, upon walking into La Santa's office, present in the office was the nurse responsible for not administering the medication to the particular patient.

21. La Santa summoned Plaintiff into a meeting with the nurse involved in the failure to administered medication to the particular patient on March 24, 2016 with the sole purpose of indisposing the Plaintiff with her co-workers.

22. As a result of La Santa's false accusation and ongoing harassment on April 2, 2016 Plaintiff filed a charged with Defendant against La Santa. As a result of the harassment and hostile work environment at the hands of La Santa, Plaintiff began to suffer tension, anxiety and an ever increasing stress in the workplace.

23. As a result of the harassment and hostile work environment created by La Santa, Plaintiff's health began to deteriorate. Due to the anxiety being suffered by Plaintiff

4

as a result La Santa's accusation and the indifference treatment that Plaintiff began to experience from fellow nurses, she reported herself to the Defendant's employees' clinic on April 4, 2016 with symptoms of anxiety.

24. At the employees' clinic Plaintiff was treated by Dr. Rolando Walker, who diagnosed Plaintiff with anxiety and recommended her rest until April 11, 2016 and to continue treatment with her psychiatrist.

25. After Plaintiff return to work, La Santa began to reject the Plaintiff and despite being her supervisor would not address the Plaintiff properly in any manner. La Santa also began a pattern of retaliation against the Plaintiff for the complaint that Plaintiff logged against La Santa.

26. Due to the stress that La Santa's continuous hostile behavior was causing on Plaintiff, on April 13, 2016 Plaintiff contacted the Director for the Nursing, Alejandro López to request the status of her complaint against La Santa.

27. To Plaintiff's surprise Mr. López had done nothing with the complaint and during his meeting with Plaintiff he did not even take notes and did not give any assurances as to what he was going to do with Plaintiff's complaint.

28. In order to avoid the stress that La Santa's behavior was causing the Plaintiff, she asked Mr. López to only assign her working schedules during the night shift so as to avoid La Santa to which he responded that he could not do so.

29. As a result of continued hostile work environment that Plaintiff suffered at the hands of La Santa, on April 18, 2016 Plaintiff visited her psychiatrist, Ángel M. Gómez, who recommended Plaintiff rest until April 28, 2016.

30. After returning to work, Plaintiff again began to suffer rejection and humiliation from her supervisor La Santa, who despite being the supervisor, would often not address the Plaintiff at all. This behavior from La Santa lasted for weeks. La Santa's hostile behavior toward the Plaintiff was influential in ensnaring others managerial employees to mistreat and view the Plaintiff unfavorably.

31. For instance, on June 6, 2016, Plaintiff was summoned before Sonia Dávila, Defendant's Nursing Coordinator. In Ms. Dávila's office Plaintiff was treated very badly and accused of not assisting in an emergency with one of her patients on May 31, 2016, despite the fact that at the time Plaintiff was attending another emergency with a patient with chest pain and fellow nurses had informed the Plaintiff to remain with her patient while they and the doctor on shift went to handle the second emergency.

32. La Santa's hostile conduct towards Plaintiff also promoted others to humiliate the Plaintiff. For example, on August 26, 2016 Plaintiff was called "Aunt Jemina" and "Big Mama" by fellow nurses.

33. These comments were heard by Dr. Cepero, who was very displeased by the same and informed the nurses that this was not the proper way to refer to a fellow nurse. Plaintiff made a complaint before her supervisor La Santa regarding these comments but La Santa did nothing to address this issue.

34. La Santa's hostile conduct toward Plaintiff only intensified as the days went by. For example, on September 20, 2016, La Santa removed from Plaintiff's working area some IV medications that were already classified by the Plaintiff and ready to be administered by her.

35. La Santa's hostile and harassing conduct towards the Plaintiff substantially promoted the exacerbation of Plaintiff's mayor depressive disorder and affected and altered Plaintiffs' overall performance at her workplace. Despite this and to further harass Plaintiff La Santa would inform her of her duties multiple times during a working shift.

36. By this time, La Santa's harassment behavior was having its toll on Plaintiff so much that on September 21, 2016 Plaintiff had to visit her psychiatrist, Dr. Gómez. After evaluating her, Dr. Gómez indeed confirmed the diagnosis of mayor depressive disorder and recommended her rest until September 26, 2016.

37. After returning to work, Plaintiff continued to suffer hostile work environment at her workplace by La Santa and fellow employees. Consequently, on October 3, 2016 Plaintiff visited the employees' clinic at Defendant's facilities. There she was treated by Dr. Marta Vega who referred Plaintiff to the State Insurance Fund.

38. The following day Plaintiff was seen at the State Insurance Fund by Dr. Reyes who gave her rest until October 14, 2016.

39. In light of Plaintiff mayor depressive disorder and the medications she was taken, on October 13, 2016, Plaintiff's psychiatrist Dr. Gómez recommended reasonable accommodation at her workplace which consisted of not working 2 consecutive night shifts. Plaintiff tendered the reasonable accommodation certificate to Mr. Lopez, the Director of the Nursing.

40. Since the harassment against Plaintiff continued on October 18, 2016 Plaintiff suffered a nervous breakdown with high blood pressure at her workplace. Plaintiff was taken to the employees' clinic where she ordered to rest for 2 days.

41. Upon her return from work on October 21, 2016, Plaintiff was transferred to work at the emergency room.

42. La Santa's hostile behavior toward the Plaintiff also caused other managerial employees to mistreat and view the Plaintiff unfavorably because of her health related absences.

43. For instance, on 24th of October, 2016 while working at the emergency room where she had been transferred for that day, Plaintiff was summoned to the office of Human Resources where she was questioned by the Director of Nursing, Mr. López and the Director of Human Resources, Teresa Colón, as to why Plaintiff went to the employees' clinic on October 18, 2016. At that meeting Plaintiff was also accused of abandoning her patients.

44. At that meeting Mr. López and Ms. Colón informed Plaintiff that she needed to talk to her psychiatrist, Dr. Gómez to modify the certificate so as to indicate that she (the Plaintiff was fit to work; that her absences were affecting her fellow nurses and that they could not give her the reasonable accommodation requested by her psychiatrist. Plaintiff responded that her absences were medically justified, that she was medically cleared to work as she had done on the 21st of October, 2016 and that no doctor had ever indicated that she was not fit to work.

45. On October 25, 2016 Plaintiff was again transferred out of her working area to work at the 4th floor; on the 29th and the 30th Plaintiff was transferred to work at the 3rd floor.

46. On November 3, 2016 Ms. Colón summoned Plaintiff again to Human Resources. At that meeting Ms. Colón was quite disrespectful to the Plaintiff; addressed her

8

with a threatening demeanor and was very abusive verbally. At that time Plaintiff was even falsely accused of threatening to assault her supervisor La Santa. After leaving the meeting Plaintiff had to take a pill of Captropril for high blood pressure.

47. To continue harassing the Plaintiff on November 6, 2016 Defendant purposefully gave Plaintiff an overnight working schedule with full knowledge that the following morning Plaintiff had an appointment with the State Insurance Fund for medical treatment.

48. On November 16, 2016 Plaintiff got paid approximately $300 less than usual because during the working period from October 30 to November 5 Plaintiff was not given the corresponding days of work.

49. On November 22, 2016 Plaintiff met with Ana Beatriz Torres, the Hospital Administrator, and complained about the harassment and hostile work environment the Plaintiff was suffering at the hands of La Santa and managerial personnel. However, Ms. Torres did nothing to help the Plaintiff.

50. On November 29, 2016 Dr. Gómez issued a second certification for reasonable accommodation for Plaintiff's condition. On December 1, 2016 Plaintiff provided that certificate to her supervisor, Ms. La Santa.

51. Despite the recommendations made by Dr. Gómez, La Santa together with other managerial personnel kept giving Plaintiff consecutive night shifts. Defendant assigned consecutive working night shift to the Plaintiff on the 15th and 16th of October, the 12th and 13th of November and the 10th and 11th of December.

52. On November 30, 2016, Plaintiff again got paid approximately $300 less than usual because during the working period from the 13th to the 27th of November Plaintiff was not given the corresponding days of work.

53. On December 1, 2016, Plaintiff was again summoned to the Office of Human Resources where she was informed that Defendant could not grant her the request for reasonable accommodation. At that meeting Plaintiff was provided with a letter to be given to Dr. Gómez. At that meeting Plaintiff was also informed that she was being suspended until Dr. Gómez changed its certification so as to certify that Plaintiff was fit to work.

54. On December 6 and 12 Plaintiff sought to be able to return to work by calling the Defendant and pleading to be allowed back to work, but Defendant refused to allow her back to work.

55. Neither Dr. Gómez, Plaintiff's psychiatrist nor the State Insurance Fund has ever concluded that Plaintiff was not fit to work.

56. In both instances in which Plaintiff sought to be allowed back to work, she was only given the option to visit the Office of Human Resources to file for short term disability.

57. During Plaintiff's conversation with Defendant on December 12, 2016, she was even threatened to be fired if she did not provide a certification from Dr. Gómez certifying that she was fit to work.

58. By letter dated December 19, 2016, Defendant informed the Plaintiff that she was terminated because she did not provide a medical certificate from her doctor certifying that she fit work.

59. At the time of her termination, Plaintiff was able to perform the essential functions of her employment as a Nurse with the Defendant.

60. The constant false accusations, the embarrassing and humiliating comments regarding the Plaintiff physical appearance, the constant reminder of her duties, the disrespectful manner in which the Plaintiff was addressed, the refusal to grant her reasonable accommodations, all at the hands La Santa and other fellow and managerial employees were frequent, severe in nature, and humiliating.  These conducts affected and altered Plaintiffs' overall performance at her workplace with the Defendant.

## FIRST CAUSE OF ACTION
### *(Disability Discrimination – Termination – ADA)*

61. The allegations contained in paragraphs 1 through 60 of this Complaint are incorporated by this reference as if fully set forth herein by Plaintiff.

62. Defendant's reason for terminating the Plaintiff constitutes evidence of disability discrimination.

63. Defendant's termination of Plaintiff was based on her disability. Defendant's decision was made with malice and with reckless indifference of Plaintiff's federally protected rights, and thus, constitutes an unlawful employment conduct pursuant to the American with Disability Act.

64. As a direct and proximate cause of Defendant's aforementioned disability discrimination conduct, Plaintiff has suffered and will continue to suffer, under this cause of action, great emotional and financial damages estimated at one million dollars ($1,000,000.00).

## SECOND CAUSE OF ACTION
### *(Disability Discrimination – Reasonable Accommodation – ADA)*

65. The allegations contained in paragraphs 1 through 64 of this Complaint are incorporated by this reference as if fully set forth herein by Plaintiff.

66. Defendant knowingly and purposefully did not make medically reasonable accommodations to the Plaintiff to attend to her disability medical needs.

67. Defendant's denial of Plaintiff's request for reasonable accommodation was based on Plaintiff's disability as it was rooted in Plaintiff's mental impairments.

68. Defendant's decision was made with malice and with reckless indifference of Plaintiff's federally protected rights, and thus, constitutes an unlawful employment conduct pursuant to the American with Disability Act.

69. As a direct and proximate cause of Defendant's aforementioned disability discrimination conduct, Plaintiff has suffered and will continue to suffer, under this cause of action, great emotional and financial damages estimated at one million dollars ($1,000,000.00).

## THIRD CAUSE OF ACTION
### *(Harassment / Hostile Work Environment – ADA)*

70. The allegations contained in paragraphs 1 through 69 of this Complaint are incorporated by this reference as if fully set forth herein by Plaintiff.

71. Defendant's aforementioned conduct constitutes harassment and a hostile work environment against the Plaintiff because of her disability.

72. Defendant's decision was made with malice and with reckless indifference of Plaintiff's federally protected rights, and thus, constitutes an unlawful employment conduct pursuant to the American with Disability Act.

73. As a direct and proximate cause of Defendant's aforementioned disability discrimination conduct, Plaintiff has suffered and will continue to suffer, under this cause of action, great emotional and financial damages estimated at one million dollars ($1,000,000.00).

### FOURTH CAUSE OF ACTION
*(Discrimination – Suspension – ADA)*

74. The allegations contained in paragraphs 1 through 73 of this Complaint are incorporated by this reference as if fully set forth herein by Plaintiff.

75. Defendant's reason for suspending the Plaintiff constitutes evidence of disability discrimination.

76. Defendant's suspension of Plaintiff was based on her disability. Defendant's decision was made with malice and with reckless indifference of Plaintiff's federally protected rights, and thus, constitutes an unlawful employment conduct pursuant to the American with Disability Act.

77. As a direct and proximate cause of Defendant's aforementioned disability discrimination conduct, Plaintiff has suffered and will continue to suffer, under this cause of action, great emotional and financial damages estimated at one million dollars ($1,000,000.00).

### FIFTH CAUSE OF ACTION
*(Disability Discrimination – Termination - Puerto Rico Law 100 and Law 44)*

78. The allegations contained in paragraphs 1 through 77 of this Complaint are incorporated by this reference as if fully set forth herein by Plaintiff.

79. Defendant's reason for terminating the Plaintiff constitutes evidence of disability discrimination.

80. Defendant's termination of Plaintiff was based on her disability. Defendant's decision was made with malice and with reckless indifference of Plaintiff's state protected rights, and thus, constitutes an unlawful employment conduct pursuant to Puerto Rico Law 100 and Law 44.

81. As a direct and proximate cause of Defendant's aforementioned disability discrimination conduct, Plaintiff has suffered and will continue to suffer, under this cause of action, great emotional and financial damages estimated at one million dollars ($1,000,000.00).

### SIXTH CAUSE OF ACTION
*(Reasonable Accommodation – Puerto Rico Law 100 and Law 44)*

82. The allegations contained in paragraphs 1 through 81 of this Complaint are incorporated by this reference as if fully set forth herein by Plaintiff.

83. Defendant knowingly and purposefully did not make medically reasonable accommodations to the Plaintiff to attend to her disability medical needs.

84. Defendant's denial of Plaintiff's request for reasonable accommodation was based on Plaintiff's disability as it was rooted in Plaintiff's mental impairments.

85. Defendant's decision was made with malice and with reckless indifference of Plaintiff's state protected rights, and thus, constitutes an unlawful employment conduct pursuant to the Puerto Rico Law 100 and Law 44.

86. As a direct and proximate cause of Defendant's aforementioned disability discrimination conduct, Plaintiff has suffered and will continue to suffer, under this cause of action, great emotional and financial damages estimated at one million dollars ($1,000,000.00).

## SEVENTH CAUSE OF ACTION
### *(Harassment / Hostile Work Environment – Puerto Rico Law 100 and Law 44)*

87. The allegations contained in paragraphs 1 through 86 of this Complaint are incorporated by this reference as if fully set forth herein by Plaintiff.

88. Defendant's aforementioned conduct constitutes harassment and a hostile work environment against the Plaintiff because of her disability.

89. Defendant's decision was made with malice and with reckless indifference of Plaintiff's state protected rights, and thus, constitutes an unlawful employment conduct pursuant to the Puerto Rico Law 100 and Law 44.

90. As a direct and proximate cause of Defendant's aforementioned disability discrimination conduct, Plaintiff has suffered and will continue to suffer, under this cause of action, great emotional and financial damages estimated at one million dollars ($1,000,000.00).

## EIGHT CAUSE OF ACTION
### *(Discrimination – Suspension – Puerto Rico Law 100 and Law 44)*

91. The allegations contained in paragraphs 1 through 90 of this Complaint are incorporated by this reference as if fully set forth herein by Plaintiff.

92. Defendant's reason for suspending the Plaintiff constitutes evidence of disability discrimination.

93. Defendant's suspension of the Plaintiff was based on her disability. Defendant's decision was made with malice and with reckless indifference of Plaintiff's state protected rights, and thus, constitutes an unlawful employment conduct pursuant to the Puerto Rico Law 100 and Law 44.

94. As a direct and proximate cause of Defendant's aforementioned disability

discrimination conduct, Plaintiff has suffered and will continue to suffer, under this cause of action, great emotional and financial damages estimated at one million dollars ($1,000,000.00).

### FIFTH CAUSE OF ACTION:
### *Puerto Rico Law 80*

95. The allegations contained in paragraphs 1 through 94 of this Complaint are incorporated by this reference as if fully set forth herein by Plaintiff.

96. Puerto Rico Law 80 of May 30, 1976 establishes an indemnity payment to employees who are discharged from their employment without just cause.

97. Defendant's termination of the Plaintiff constitutes a discharge without just cause.

98. Plaintiff highest salary within the last 3 years of employment with Defendant was $32,273 in the year 2015.

99. As a direct and proximate cause of Defendant's aforementioned conduct, Plaintiff is entitled, in addition to the salaries she would have earned, to an indemnification equal to 3 months plus 2 weeks for each of her 9-plus years of service pursuant to Puerto Rico Law 80, plus attorney's fees.

100. Plaintiff indemnification pursuant to Law 80 is estimated at $13,653.92 plus $2,048.08 in attorney's fee.

### JURY TRIAL

101. Plaintiff hereby invokes her Seventh Amendment Right to a jury trial for all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the entry of judgment imposing on Defendant the

payment of a) compensation of EIGHT MILLION DOLLARS ($8,000,000.00) for causes of action ONE through EIGHT; b) statutory, liquidated, punitive damages under ADA and Law 100 and Law 44;  c) all loss wages including all fringe benefits Plaintiff would have earned up to the date of trial; d) double compensatory damages pursuant to Law 100 and Law 44; e) front pay; f) reinstatement; g) The salary wages including all fringe benefits Plaintiff would have earned in addition to an indemnification for the NINTH cause of action totaling $13,653.92 plus $2,048.08 in attorney's fee all with interest and h) attorney's fees and the cost of litigation, as well as any other remedy this Honorable Court deems just and proper.

In Juana Díaz, Puerto Rico on the 14nd day February, 2018.

*S/ALFREDO ACEVEDO CRUZ*
ALFREDO ACEVEDO CRUZ, ESQ.
USDC-PR NUMBER 220705

LAW OFFICE OF ALFREDO ACEVEDO CRUZ
P.O. BOX  93
JUANA DIAZ, PR  00795

Tel.: (787) 837-0031
Fax:  (787) 837-0032
e-mail: lcdoacevedo@yahoo.com