IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

GLORIA SANTIAGO-RIVERA

Plaintiff

v.

HOSPITAL GENERAL MENONITA
DE AIBONITO, ET AL.

Defendants

CIV. NO.: 18-1084 (SCC)

## OPINION AND ORDER

Plaintiff Gloria Santiago-Rivera ("Plaintiff Santiago-Rivera" or "Plaintiff") worked as a nurse at Hospital General Menonita Aibonito ("Defendant HGMA", "HGMA", or "Defendant"). She claims that she was unlawfully discharged from her employment because of her depressive disorder condition. Plaintiff Santiago-Rivera also claims that Defendant HGMA's managerial staff and her supervisor harassed her and created a hostile work environment for her.

Pending before the Court is Defendant HGMA's Motion for Summary Judgment, *see* Docket No. 48,[1] which Plaintiff

---

[1] Plaintiff Santiago-Rivera's Second Amended Complaint includes Liberty Mutual Insurance Co. ("Liberty") as a Co-Defendant, for it is Defendant HGMA's insurance company. *See* Docket No. 26. Because Liberty moved to join Defendant HGMA's Motion for Summary Judgment, *see* Docket

Santiago-Rivera timely opposed ("Plaintiff's Opposition"), *see*

Docket No. 58. Defendant HGMA subsequently filed a Reply.

*See* Docket No. 65.  For the reasons set forth below, Defendant

HGMA's Motion for Summary Judgment is **GRANTED.**

### I.   Background

Plaintiff   Santiago-Rivera   filed   this   action   against

Defendant   HGMA   and   its   insurance   company[2]   under   the

American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et*

*seq. See* Docket No. 26.[3] Plaintiff Santiago-Rivera also sued

Defendant HGMA under Puerto Rico law analogous statutes,

namely, Law No. 80 of May 30, 1976, P.R. Laws Ann., tit. 29,

§ 185(a) *et seq*. Law No. 44 of July 2, 1985, P.R. Laws Ann. tit.

No. 51, and the Court "noted" said request, *see* Docket No. 54, for ease of reference, throughout this Opinion and Order, the Court will address the Co-Defendants as "Defendant HGMA" or "Defendant".

[2] *See supra* note 1.

[3] The Original Complaint was filed on February 14, 2018. *See* Docket No. 1. A First Amended Complaint was subsequently filed on September 19, 2018. *See* Docket No. 17. On December 18, 2018, the Court granted Plaintiff Santiago-Rivera's Motion for Leave to file a Second Amended Complaint. *See* Docket No. 24. The same was filed separately the next day. *See* Docket No. 26.

1, § 500 *et seq.*; Law No. 100 of June 30, 1959, P.R. Laws Ann., tit. 29, § 146 *et seq.*[4] *Id.*

Defendant HGMA moved for summary judgment on the grounds that the uncontested material facts show that Plaintiff Santiago-Rivera is not a qualified individual with a disability under the ADA. *See* Docket No. 48 at 2. In addition to its Motion for Summary Judgment, Defendant HGMA filed a Statement of Undisputed Material Facts ("DSUMFs"). *See* Docket No. 49. Plaintiff Santiago-Rivera opposed Defendant's Motion for Summary Judgment by stating that she has established a *prima facie* case of disability discrimination under the ADA. *See* Docket No. 58 at 18. She also contested the DSUMF, ("Plaintiff's Opposition to DSUMF") and filed a Statement of Additional Material Facts ("PSAMF"). *See* Docket No. 59. Subsequently, HGMA filed its Reply, *see* Docket No. 65, and filed a separate response to Plaintiff's

---

[4] Plaintiff Santiago-Rivera voluntarily dismissed her Fair Labor Standard Act, 29 U.S.C § 201 *et seq.*, and the Puerto Rico Working Hours and Days Act, P.R. Laws Ann., tit 29, § 201 *et seq.*, claims in her Opposition. Docket No. 58 at 2.

Opposition to DSUMF and PSAMF ("Response to Plaintiff's Opposition to DSUMF and PSAMF"), *see* Docket No. 64.

## II.  Summary Judgment Standard

A party may move for summary judgment if the evidence on the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(a). The purpose of a motion for summary judgment is to "pierce the pleadings" and evaluate the evidence to assess whether a trial is necessary. *Theriault v. Genesis HealthCare LLC*, 890 F.3d 342, 348 (1st Cir. 2018) (citing *Kearney v. Town of Wareham*, 316 F.3d 18, 21 (1st Cir. 2002)).

In assessing a motion for summary judgment, the judge must draw all reasonable inferences in favor of the nonmoving party. *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007) (citing *Calvi v. Knox County*, 470 F.3d 422, 427 (1st Cir. 2006)). In conducting this review, "the judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Finally, the Court must deny a motion for summary judgment if it finds that a genuine issue of material fact remains. *Id.* at 248.

### III. Plaintiff Santiago-Rivera's Failure to Comply with Federal Rule of Civil Procedure 56 and the Sham Affidavit Rule

Before turning to the undisputed facts of this case there are several matters that the Court must first address. In its Response to Plaintiff's Opposition to DSUMF and PSAMF, Defendant argues that Plaintiff failed to duly oppose its DSUMF. *See* Docket No. 64 at 2-5. First, Defendant claims that Plaintiff's Opposition to DSUMF contains factual assertions that are not supported by the record or by admissible evidence. *Id.* at 3. Second, Defendant avers that Plaintiff Santiago-Rivera's denials are lengthy, argumentative, and in narrative form, contrary to the requirements of Local Rule 56. *Id.* Third, Defendant contends that many of Plaintiff Santiago-Rivera's denials and qualifications to Defendant's DSUMF, contain additional facts in violation of Local Rule 56(c). *Id.* at

4. Finally, Defendant HGMA alleges that Plaintiff Santiago-Rivera violated the sham affidavit rule by submitting a sworn statement that was signed on the same day that she filed her Opposition. *Id.* at 5. The Court will first address Plaintiff Santiago-Rivera's violations of Federal Rule of Civil Procedure 56 ("Rule 56") and Local Rule 56(c) and then the sham affidavit rule.

### 1. *Plaintiff Santiago-Rivera's Failure to Comply with Federal Rule of Civil Procedure 56 and Local Rule 56(c)*

To dispute a material fact, the nonmoving party must offer "hard proof rather than spongy rhetoric." *Kearney v. Town of Wareham*, 316 F.3d 18, 21 (1st Cir. 2002). Specifically, Federal Rule of Civil Procedure 56(c)(1)(A) states that the nonmoving party may use "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials [,]" in order to oppose a motion for summary judgment. Fed. R. Civ. P. 56(c)(1)(A). For its part, Local Rule 56(c) further zeroes-in on this point and mandates that, the nonmoving party must,

with his or her opposition, admit, deny or qualify the statement of facts filed by the moving party. L. Cv. R. 56(c). And "[u]nless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation[.]" *Id.*

In this case, many of Plaintiff Santiago-Rivera's denials are unsupported because they either lack record citations or solely cite to the Second Amended Complaint.[5] To comply with Local Rule 56(c) and properly create a factual dispute, Plaintiff Santiago-Rivera had to deny Defendant HGMA's DSUMF with a reference to a record citation. *See* L. Cv. R. 56(c). As for Plaintiff Santiago-Rivera's constant reliance on the Second Amended Complaint, the Court notes that a complaint is not proper evidence to oppose a motion for summary judgment. The reason being that, "[o]rdinarily, statements in a complaint are not part of the summary judgment record[,]" unless the complaint has been verified, for then it can be used to "consider factual averments based on personal knowledge . . . as the equivalent of an affidavit

---

[5] *See, e.g.*, Docket No. 59 at ¶¶ 55, 63, 66, 67, 68, 72, 76, 79, 90, 115, 116.

for purposes of summary judgment." *See Doherty v. Donahoe*, 985 F. Supp.2d 190, 195 (D. Mass. 2013) (citing *Sheinkopf v. Stone,* 927 F.2d 1259, 1262-63 (1st Cir. 1991)). Here, the Second Amended Complaint was not verified, as such, it cannot be considered as the equivalent of a sworn statement. The Court reminds Plaintiff Santiago-Rivera that the purpose of a motion for summary judgment is to "pierce the pleadings." *Theriault*, 890 F.3d at 348 (citing *Kearney v. Town of Wareham*, 316 F.3d 18, 21 (1st Cir. 2002)). Therefore, the pleadings alone do not suffice.

Furthermore, the Court does not need to consider Plaintiff Santiago-Rivera's unsupported factual propositions. *See Carreras v. Sajo, Garcia & Partners*, 596 F.3d 25, 32 (1st Cir. 2010) (upholding district court's decision to exclude plaintiff's unsupported denials because his did not provide appropriate citations to the record). Hence, the Court will disregard Plaintiff Santiago-Rivera's denials that contain unsupported factual assertions. *Id.*; *see also* L. Cv. R. 56(e).

Besides requiring an opposing party to support its denials with record citations, Local Rule 56(c) mandates an opposing

party to comply with two additional requirements. First, an opposing party's statement of material facts must be short and concise. L. Cv. R. 56(c). Second, additional facts are to be submitted in a separate section. *See id.* Some of Plaintiff's denials do not comply with the short and concise mandate as they are lengthy and argumentative.[6]  In this same vein, some of these lengthy and argumentative denials contain additional facts that were not filed in a separate section.[7] *See Natal Rivera v. Oriental Bank & Trust*, 291 F. Supp.3d 215, 218 (D.P.R. 2018). Failure to submit additional facts in a separate section allows the Court to disregard such facts. *Carreras,* 596 F.3d at 32. In light of Plaintiff Santiago-Rivera's failure to comply with the requirements of Local Rule 56(c), the Court will not consider the argumentative denials and the additional facts which were not submitted in accordance with the aforementioned Local Rule.

---

[6] *See, e.g., id.* at ¶¶ 8, 47, 84, 87, 100, 116.

[7] *See id.*

2.  *Plaintiff Santiago-Rivera's Sworn Statement*

Besides violating Rule 56 and Local Rule 56(c), Plaintiff Santiago-Rivera also infringed the sham affidavit rule. This rule posits that a nonmoving party cannot contest a motion for summary judgment with a sworn statement that contradicts what a party has answered unambiguously during the discovery stage. *Escribano-Reyes v. Professional Hepa Certificate Corp.*, 817 F.3d 380, 386 (1st Cir. 2016). The only exception to the rule is if the nonmoving party provides a good explanation as to why his or her testimony changed. *Id.*

Here, Plaintiff Santiago-Rivera submitted a sworn statement tailored to contradict crucial facts in Defendant's DSUMF, without providing any explanation or justification as to why her testimony changed.[8] *See* Docket No. 58-1. It is particularly revealing that the sworn statement was signed the same day that Plaintiff Santiago-Rivera opposed Defendant HGMA's Motion for Summary Judgment. *See id.*

---

[8] Plaintiff Santiago-Rivera's sworn statement attempts to controvert, *inter alia,* Defendant HGMA's DSUMFs at ¶¶ 3, 22, 47, 84, 91, 95.

In brief, Plaintiff Santiago-Rivera's sworn statement states that: (1) she did not authorize Hospital Menonita-CIMA[9] ("CIMA") to release her medical records; (2) the person responsible for administering a medication to a patient was a fellow nurse and not her; (3) she was capable of performing the duties that her job required despite her medical condition; and (4) she never agreed to obtain a medical certificate from her psychiatrist. *Id.*

Because Plaintiff Santiago-Rivera's sworn statement contains new information that is clearly made-to-order and self-serving, with the sole purpose of controverting Defendant HGMA's DSUMF, the Court will strike Plaintiff Santiago-Rivera's sworn statement at Docket Number 58-1 from the record for violation of the sham affidavit rule. *See Escribano-Reyes*, 817 F.3d at 387 (affirming district court's decision to strike a post discovery sworn statement because it violated the sham affidavit rule).

---

[9] Hospital Menonita-CIMA ("CIMA") is a psychiatric hospital owned by Mennonite General Hospital, Inc. ("MGH"). Docket No. 49-1 at ¶¶ 7-8. CIMA is independent from Defendant HGMA. *Id.*

## IV. Factual Findings

The Court next turns to its factual findings. After reviewing Defendant HGMA's DSUMF, *see* Docket No. 49, Plaintiff Santiago-Rivera's Opposition to DSUMFs and her PSAMF, *see* Docket No. 59, along with Defendant HGMA's Response to Plaintiff's Opposition to DSUMF and PSAMF, *see* Docket No. 64, in addition to the documentation cited thereto in accordance with Local Rule 56(e), the Court finds that the following facts are uncontested.

### 1. *Plaintiff Santiago-Rivera's Medical Condition*

In 1995 Santiago-Rivera was diagnosed with a depressive disorder. DSUMF at ¶ 4; Docket No. 49-2 at 35. Plaintiff Santiago-Rivera's condition does not allow her to perform major life activities such as the ability to concentrate, as her mind often drifts to irrelevant matters. DSUMF at ¶ 5. Her condition precludes her from carrying out every-day tasks throughout her house such as cooking and cleaning. *Id.* Due to her condition, Plaintiff Santiago-Rivera also suffers from, *inter alia,* insomnia, anxiety, loss of physical strength—which makes it difficult for her to get out of bed—panic attacks, and

low self-esteem. *Id.* at ¶ 6.

2.  *Plaintiff Santiago-Rivera's Relationship with Defendant
    HGMA*

Defendant HGMA is a nonprofit corporation organized under the laws of the Commonwealth of Puerto Rico, whose parent corporation is Mennonite General Hospital, Inc. ("MGH"). *Id.* at ¶ 1; Docket No. 49-1 at ¶¶ 7-8. Besides HGMA, MGH owns two other independent hospital institutions, Hospital General de Cayey and CIMA. DSUMF at ¶ 1; Docket No. 49-1 at ¶ 8. Each institution is separate from the other. DSUMF at ¶ 2; Docket No. 49-1 ¶¶ 7-8. Hence, no administrative personnel of one hospital has access to a patient's information in another hospital. DSUMF at ¶¶ 2-3[10];

---

[10] Plaintiff Santiago-Rivera denied Defendant HGMA's DSUMF ¶ 2 and admitted in part and denied in part DSUMF ¶ 3. The aforementioned DSUMFs stand for the proposition that, because the hospitals owned by MGH are independent from each other, no administrative personnel from one hospital is privy to a patient's information from another hospital under the MGH umbrella. *See* DSUMF at ¶¶ 2-3. Moreover, patient records are protected in accordance with the Health Insurance Portability and Accountability Act. *Id.* at ¶ 2. In her denial of DSUMF ¶ 2, Plaintiff Santiago-Rivera posits that, HGMA administrative personnel must have had access to her medical records because her personnel record at HGMA contains a copy of a medical certificate which indicates that she was

partially hospitalized at CIMA between August 21, 2008 and September 4, 2008. *See* Plaintiff Santiago-Rivera's Opposition to DSUMF at ¶ 2. She further notes that said certificate included a diagnosis of "major depression". *Id.* Plaintiff Santiago-Rivera repeats this same argument in her denial of DSUMF ¶ 3, and further argues that HGMA administrative personnel had access to her CIMA medical records because the same were produced as part of the instant litigation without Defendant HGMA having secured prior authorization from her to obtain the same. *See* Plaintiff Santiago-Rivera's Opposition to DSUMF at ¶ 3. Plaintiff Santiago-Rivera's denials are not responsive to Defendant HGMA's DSUMFs at ¶¶ 2-3. Plaintiff Santiago-Rivera has not controverted the fact that, because the hospitals under the MGH umbrella are independent from each other, there is no comingling of patient records and therefore administrative personnel from HGMA do not have access to a patient's medical records in another one of the hospitals. Moreover, while Plaintiff Santiago-Rivera refers to the medical certificate in her HGMA administrative personnel file from her partial hospitalization at CIMA with the goal of showing that HGMA administrative personnel had access to her CIMA medical records, Plaintiff Santiago-Rivera overlooks the fact—as she herself admitted—that she personally handed over the medical certificate noting her partial hospitalization to the Office of Human Resources at HGMA. *See* Plaintiff Santiago-Rivera's Opposition to DSUMF at ¶ 20. Furthermore, Plaintiff Santiago-Rivera also attempts to transform the proposed fact at DSUMF ¶ 3 into an issue regarding the authorization—or alleged lack thereof—to obtain her CIMA medical records. However, DSUMF at ¶ 3 does not drive at whether authorization was provided—or not provided—to obtain Plaintiff Santiago-Rivera's CIMA medical records, but rather, it drives at whether HGMA administrative personnel had access to her medical records prior to the commencement of the instant litigation. A reference to a medical certificate that Plaintiff Santiago-Rivera herself handed over to the HGMA Office of Human Resources does not controvert the proposed facts at DSUMF at ¶¶ 2-3. As for Plaintiff Santiago-Rivera's argument that Defendant HGMA produced her CIMA medical records as part of the instant litigation without seeking her authorization to do so, *see* Plaintiff Santiago-Rivera's Opposition to DSUMF at ¶ 3, Defendant

Docket No. 49-1 at ¶¶ 7-9.

In February 2007, Plaintiff Santiago-Rivera applied to work at HGMA. DSUMF at ¶ 9; Docket No. 49-2 at 62. As part of the application process, Plaintiff Santiago-Rivera was interviewed by Alejandro López ("López"). *Id.* At the time of the interview, López served as the assistant to the director of the nursing department at HGMA. DSUMF at ¶¶ 10-11; Docket No. 49-3 at 12; Docket No. 49-1 at ¶ 14. Plaintiff Santiago-Rivera did not inform López that she had been diagnosed with a major depressive condition, for she did not deem this to be something that neither López nor HGMA needed to know because she understood that her condition would not affect her job. DSUMF at ¶ 13; Docket No. 49-2 at 62-63.

On March 13, 2007, Plaintiff Santiago-Rivera began to work at HGMA, specifically in the emergency room, as a

---

HGMA clarified in its Response to Plaintiff's Opposition to DSUMF and PSAMF, that it obtained the same through a subpoena, precisely as part of the instant litigation. *See* Docket No. 64 at 15; *see also* Docket No. 64-1 (subpoena requesting CIMA medical records). The Court thus admits DSUMFs ¶¶ 2-3.

registered nurse,[11] with an associate degree in nursing.
DSUMF at ¶ 14; Docket No. 49-1 at ¶ 1. Plaintiff Santiago-
Rivera was transferred to HGMA's Labor and Delivery
Department on January 14, 2009. DSUMF at ¶ 18; Docket No.
49-1 at ¶ 2-3. But on November 17, 2009, she began to work as
a registered nurse in HGMA's Intermediate Unit.[12] DSUMF at
¶ 26; Docket No. 49-1 at ¶ 4. However, according to Plaintiff
Santiago-Rivera's deposition testimony, whenever a floor
was short-staffed or additional nurses were required, she
could be transferred to another floor in order to fill those

[11] On February 11, 2009, Plaintiff Santiago-Rivera was granted, by the
Nurses' Examining Board of the Commonwealth of Puerto Rico, a
permanent license to practice as an associate nurse. DSUMF ¶ 16; Docket
No. 29-4 at 20.

[12] In their filings before this Court, the parties have referred to several
variations of the "Intermediate Unit" such as, "Intermediate Intensive
Unit", "Intermediate Intensive Care Unit" and "Intermediate Unit-
Telemetry", when referring to the unit that Plaintiff Santiago-Rivera was
assigned to work as a nurse during the time that the alleged
discriminatory events took place. After reviewing the job description
included in Plaintiff Santiago-Rivera's personnel file, *see* Docket No. 49-4
at 5 and HGMA's Answers to Plaintiff Santiago-Rivera's Request for
Admissions, *see* Docket No. 49-1 at ¶ 4, for ease of reference and for the
sake of uniformity, the Court will refer to the unit in question as the
"Intermediate Unit" throughout this Opinion and Order.

voids. DSUMF at ¶ 45; Docket No. 49-2 at 172.

Plaintiff Santiago-Rivera's duties and responsibilities as a nurse at the Intermediate Unit included: placing IV catheters, administering medications, assessing patients, taking blood samples, placing foleys, placing electrodes and installing telemetry equipment if needed, providing resuscitation to patients, and the rest of the duties and responsibilities she carried out as an emergency room nurse.[13] DSUMF at ¶ 30. Docket No. 49-2 at 95-99.

When Plaintiff Santiago-Rivera worked as a nurse at HGMA, her job description for the Intermediate Unit required that nurses work forty (40) hours a week, in day and night shifts, according to the needs of the department. DSUMF at ¶ 29; Docket No. 52-1 at 37. Nurses would also have to work on weekends and on holidays, and they would be exposed to risks in addition to tense situations. *Id.* The job requirements

---

[13] Plaintiff Santiago-Rivera's responsibilities as an emergency room nurse were to provide treatment to patients, take blood samples, place catheters; place feeding tubes, give injections, take vital signs, conduct electrocardiograms, make nurse's notes, place foleys, and assist the physician while examining or providing treatment to patients. DSUMF ¶ 17; Docket No. 49-2 at 66-75.

also mentioned that nurses would have to remain standing up and walking for the majority of the shift. *Id*. They also had to assist in transferring patients and be able to work in any area of the nursing department. *Id.* At this time, Defendant HGMA required all the nurses at the Intermediate Unit to work consecutive night shifts during the weekend once a month. DSUMF at ¶ 35; Docket No. 52-1 at 664.

3.   *Plaintiff Santiago-Rivera's Partial Hospitalization*

Between August 21, 2008 and September 4, 2008, Plaintiff Santiago-Rivera was partially hospitalized at CIMA. DSUMF at ¶ 20; *see* Docket No. 49-1 at ¶ 10. When a patient is partially hospitalized at CIMA, the patient does not stay overnight, but rather, receives outpatient services during the day. DSUMF at ¶ 21; Docket No. 49-1 at ¶ 10. Plaintiff Santiago-Rivera states that her partial hospitalization at CIMA was due to marital problems and was not work related. DSUMF at ¶ 25; Docket No. 49-2 at 80, 82-83, 89-90. Plaintiff Santiago-Rivera provided copies to HGMA's Office of Human Resources of the medical certificates which showed that she had been partially hospitalized at CIMA between August 21, 2008 and

September 4, 2008. *See* DSUMF at ¶ 20; Docket No. 49-1 at ¶ 10.

### 4. *Efigenia Lasanta's Role as Plaintiff Santiago-Rivera's Supervisor at HGMA's Intermediate Unit*

Efigenia Lasanta ("Lasanta"), is the nursing supervisor at HGMA's Intermediate Unit. DSUMF at ¶ 40; Docket No. 49-6 at 7-8. From what Plaintiff Santiago-Rivera recalls, Lasanta became her supervisor in 2015. DSUMF at ¶ 41; Docket No. 49-2 at 143-144. Plaintiff Santiago-Rivera was evaluated once per year by her supervisor. DSUMF at ¶ 36; Docket No. 49-2 at 144-145. During these evaluations, Plaintiff Santiago-Rivera's performance was graded on a percentage basis. *Id.* at 145. Lasanta's evaluations of Plaintiff Santiago-Rivera were positive. DSUMF at ¶¶ 42-43; Docket No. 49-2 at 153-156, 193.

Plaintiff Santiago-Rivera's testimony emphasizes that while Lasanta served as her supervisor, Lasanta: (1) ignored her after she returned to work from a sick leave, DSUMF at ¶ 46(a); Docket No. 49-2 at 174; (2) opted to socialize more with other coworkers instead of with Plaintiff Santiago-Rivera, *see* DSUMF at ¶ 46(c); Docket No. 49-7 at 16; (3) took some serums

away from Plaintiff Santiago-Rivera without explaining why, *see* DSUMF at ¶ 46(d); Docket No. 49-2 at 174-175; (4) accused Plaintiff Santiago-Rivera of talking negatively about her with her former supervisor, *see* DSUMF at ¶ 46(e); Docket No. 49-2 at 177-178; (5) disproportionately transferred Plaintiff Santiago-Rivera to other hospital floors, in comparison to other nurses,[14] *see* DSUMF at ¶ 46(g); Docket No. 49-2 at 191-192; (6) reminded Plaintiff Santiago-Rivera of her daily functions, *see* DSUMF at ¶ 46(i); Docket No. 49-7 at 36-37; and (7) took some IV solutions—which had been classified by Plaintiff Santiago-Rivera in order to be administered to

---

[14] It is uncontested that starting in February 2016 Plaintiff Santiago-Rivera was transferred about five (5) times per month but in September and October she was transferred approximately ten (10) times per month. DSUMF ¶ 46(h); Docket No. 49-2 at 196-197. The Court points out that Plaintiff Santiago-Rivera does not elaborate on whether the number of times she was transferred exceeded the number of times her fellow nurses were transferred. Other than her testimony stating that she understood that she was disproportionately transferred, Plaintiff Santiago-Rivera does not offer additional information regarding the context under which the alleged transfers took place. Furthermore, during her deposition, Plaintiff Santiago-Rivera stated she could not identify any fellow nurses who had been transferred on more occasions than she had. *See* DSUMF at ¶ 46(g); Docket No. 49-2 at 192-193.

patients—to the storage area, which Santiago-Rivera had to later retrieve, *see* DSUMF at ¶ 46(j); Docket No. 49-7 at 37-39.

5.   *Failure to Administer Medication Incident*

In March 2016, Lasanta scheduled a meeting between Ms. Mariely Colón ("Ms. Colón"), a fellow nurse, and Plaintiff Santiago-Rivera, to talk about an incident involving the failure to administer medication to a patient. DSUMF at ¶ 47; Docket No. 49-6 at 30. At that meeting, Lasanta told both nurses that they needed to follow up on the administration of medications to a patient. DSUMF at ¶ 47; Docket No. 49-6 at 30. Due to the incident, Lasanta prepared an Incident Report which Plaintiff Santiago-Rivera and Ms. Colón signed. DSUMF at ¶ 49; Docket No. 52-1 at 498. While no adverse employment action was taken against Plaintiff Santiago-Rivera for this incident, she did not like how Lasanta addressed her at the meeting and therefore, wrote a letter to López, complaining about the incident.[15] *See* DSUMF at ¶¶ 51-

---

[15] It is disputed if Plaintiff Santiago-Rivera's letter to López is a complaint, charge, or a report against Lasanta. *See* Docket No. 49-7 at 32-33, 35-36; Docket No. 58-7 at 34. However, such determination is not material.

53; Docket No. 49-7 at 33, 35-36; Docket No. 52-3 at 5; Docket No. 49-3 at 12.

6. *Plaintiff Santiago-Rivera's Leave of Absences and Medical Certificates*

On April 4, 2016, after finishing her shift, Plaintiff Santiago-Rivera went to the HGMA's employee clinic where she was diagnosed with anxiety and recommended to rest and return to work on April 11, 2016. DSUMF at ¶ 58; Docket No. 49-2 at 204-205. She was also referred to the psychiatric unit at CIMA, however, she did not go. DSUMF at ¶ 59[16]; Docket No. 49-1 at ¶ 20. No administrative personnel at HGMA had access to the contents of Plaintiff Santiago-Rivera's medical record from the employee clinic. DSUMF at ¶ 57[17]; Docket No. 49-1 ¶¶ 19, 21.

---

[16] Plaintiff Santiago-Rivera denied DSUMF at ¶ 59 on the grounds that while she did not visit the psychiatric unit at CIMA, she sought treatment from her psychiatrist, Dr. Angel Gómez ("Dr. Gómez"). *See* Plaintiff Santiago-Rivera's Opposition to DSUMFs at ¶ 59. Plaintiff Santiago-Rivera's denial is not responsive to the proposed DSUMF at ¶ 59. The aforementioned proposed fact is admitted because it is uncontroverted that Plaintiff Santiago-Rivera did not visit the psychiatric unit at CIMA.

[17] Defendant HGMA's DSUMF at ¶ 57 stands for the proposition that

On April 18, 2016, Plaintiff Santiago-Rivera went to Dr.

Angel Gómez[18] ("Dr. Gómez"), her psychiatrist, who issued a

medical certificate recommending rest for ten days, that is

until April 28, 2016. *See* DSUMF at ¶¶ 61-62; Docket No. 52-3

at 189; Docket No. 49-7 at 46. Plaintiff Santiago-Rivera

followed Dr. Gómez's recommendation and returned to work

HGMA administrative personnel did not have access to Plaintiff Santiago-
Rivera's medical record at HGMA's employee clinic. But Plaintiff
Santiago-Rivera denies DSUMF ¶ 57 on the grounds that HGMA
administrative personnel did have access to her medical record from
HGMA's employee clinic because as part of the instant litigation
Defendant HGMA obtained and produced a copy of the same without first
having sought prior authorization from her. *See* Plaintiff Santiago-Rivera's
Opposition to DSUMF at ¶ 57. This denial does not controvert the
proposed fact at DSUMF ¶ 57. The reason being that, in her denial,
Plaintiff Santiago-Rivera misreads the proposed fact set forth by
Defendant HGMA at DSUMF ¶ 57, for the same has nothing to do with
whether authorization was—or was not—granted by Plaintiff Santiago-
Rivera in order for Defendant HGMA to obtain a copy of her medical
records. As such, it remains uncontroverted that HGMA administrative
personnel did not have access to Plaintiff Santiago-Rivera's medical
records from the HGMA employee clinic. Therefore, DSUMF ¶ 57 is
admitted.

[18] Dr. Gómez first started treating Plaintiff Santiago-Rivera on May 5, 2014.
DSUMF at ¶ 103; Docket No. 49-11 at 21-22. Between May 2014 and April
2016, Dr. Gómez did not include anything related to Plaintiff Santiago-
Rivera's workplace in her medical record. DSUMF at ¶ 107; Docket No.
49-11 at 93.

on April 29, 2016. DSUMF at ¶ 62; Docket No. 49-7 at 46. On September 21, 2016, Dr. Gómez issued a second medical certificate. DSUMF at ¶ 67; Docket No. 49-7 at 70; Docket No. 52-3 at 4. There, Dr. Gómez prescribed Plaintiff Santiago-Rivera certain medication and recommended that she take a second leave of absence, until September 29, 2016, in order to rest. *Id.* It was during this visit on September 21, 2016, that Dr. Gómez found that Plaintiff Santiago-Rivera was depressed and anxious. DSUMF at ¶ 109; Docket No. 49-11 at 104. Dr. Gómez's medical records do not reflect that Plaintiff Santiago-Rivera's depression was caused by her work environment. DSUMF at ¶ 110; Docket No. 49-11 at 106.

On October 3, 2016, Plaintiff Santiago-Rivera abandoned her workstation at HGMA, without requesting permission to do so or informing that she would be stepping out in order to visit the HGMA's employee clinic a second time. *See* DSUMF at ¶ 68; Docket No. 49-1 at ¶¶ 26-28. At HGMA's employee clinic, Plaintiff Santiago-Rivera was treated by Dr. Marta Vega ("Dr. Vega"). *See* DSUMF at ¶ 69; Docket No. 49-1 at ¶¶ 26-28. Dr. Vega diagnosed Plaintiff Santiago-Rivera with a

general anxiety disorder and referred her to the State
Insurance Fund ("SIF"). *Id.* The SIF's physician recommended
Plaintiff Santiago-Rivera to rest for several days, until October
14, 2016. DSUMF at ¶ 70; Docket No. 49-7 at 75. Moreover, the
SIF determined that Plaintiff Santiago-Rivera's mental health
condition was not work related. DSUMF at ¶ 97; Docket No.
49-7 at 102-103.

On October 13, 2016, Plaintiff Santiago-Rivera visited Dr.
Gómez and told him that she was feeling anxious and
depressed because she was working consecutive night shifts.
DSUMF at ¶ 111; Docket No. 49-11 at 128-129. Based on
Plaintiff Santiago-Rivera's statement, Dr. Gómez concluded
that she should not work consecutive night shifts due to her
condition. *Id.* at 129. At that time, Dr. Gómez did not consider
necessary to prescribe a stress-free work environment for
Plaintiff. DSUMF at ¶ 113; Docket No. 49-11 at 124.  That same
day, Plaintiff Santiago-Rivera brought another medical
certificate, prepared by Dr. Gómez, to the HGMA Human
Resources Office. DSUMF at ¶ 71; Docket No. 49-9 ¶ 10. The
medical certificate included Dr. Gómez's recommendation

that Plaintiff Santiago-Rivera should not be assigned
consecutive night shifts due to her mental health condition.
*Id.* The medical certificate contained a major depressive
affective disorder diagnosis code.[19] PSAMF at ¶ 33; Docket
No. 49-1 ¶ 32; Docket No. 58-2 at 666.

   7.  *Meetings between Plaintiff Santiago-Rivera and HGMA
       Personnel*

   On October 24, 2016, Plaintiff Santiago-Rivera met with
López and Teresa Colón ("Colón"), Director of HGMA's
Human Resources Department, to discuss her relationship
with Lasanta and her medical certificate. *See* DSUMF at ¶¶ 72,
75; Docket 49-10 at 27-29; Docket No. 49-7 at 98. In the
meeting, Plaintiff Santiago-Rivera was offered working shifts
in the emergency room and labor department. DSUMF at ¶
72; Docket 49-10 at 29. But she refused to be transferred and

---

[19] Defendant HGMA states that the diagnostic code for: *major depressive
affective disorder, recurrent episode, moderate*, at the time it received the
medical certificate, was improperly listed as 296.32, when it should have
been F.33.1. Docket No. 64 at ¶ 33; *see also* Docket No. 49-1 at ¶ 32. The
meaning and appropriate interpretation of the diagnostic code 296.32 is in
dispute. However, establishing such fact is not material to the controversy
at hand.

informed Colón and López that she would like to stay at the Intermediate Unit albeit the situation with Lasanta. DSUMF at ¶ 73; Docket No. 49-9 ¶ 10; Docket No. 49-7 at 84-86.

At the meeting, while discussing the medical certificate dated October 13, 2016, which was prepared by Dr. Gómez, Colón and López explained to Plaintiff that they could not follow Dr. Gómez's recommendation of not having her work consecutive night shifts. DSUMF at ¶¶ 75, 77; Docket No. 49-7 at 98, 100. Specifically, Colón and López highlighted HGMA's policy requiring all nurses assigned to the Intermediate Unit to work one weekend per month consecutive night shifts. DSUMF at ¶ 74; Docket No. 49-9 at ¶ 10. López and Colón also informed Plaintiff Santiago-Rivera that her absenteeism was causing problems to the Intermediate Unit nurses' schedules as they had to be covering for her. DSUMF at ¶ 76; Docket No. 49-7 at 98-99. Moreover, López and Colón stated that, in the event that Plaintiff Santiago-Rivera needed to visit the HGMA employee clinic while on a shift, she had to notify her supervisor in order for her patients to be assigned to other nurses. DSUMF

at ¶ 79; Docket No. 49-9 at ¶ 10.

On November 3, 2016, Colón scheduled a meeting which was attended by Plaintiff Santiago-Rivera and Lasanta. DSUMF at ¶ 80; Docket No. 49-7 at 86. The purpose of the meeting was for Plaintiff Santiago-Rivera and Lasanta to resolve their differences. DSUMF at ¶ 80; Docket No. 49-7 at 87. At the meeting, Lasanta affirmed that her role at the Intermediate Unit was that of a supervisor; thus, it was her duty to ensure that all nurses comply with their responsibilities. DSUMF at ¶ 81; Docket No. 49-9 at ¶ 12(c). Lasanta confirmed that she had no problem with Plaintiff Santiago-Rivera and that they could start their relationship anew. DSUMF at ¶ 81; Docket No. 49-9 at ¶ 12(c). According to Lasanta, all she wanted was an excellent nursing team. DSUMF at ¶ 81; Docket No. 49-9 at ¶ 12(c). Plaintiff Santiago-Rivera replied that she wanted to continue working at the Intermediate Unit. DSUMF at ¶ 81; Docket No. 49-9 at ¶ 12(c).

During an appointment that took place on November 29, 2016, Dr. Gómez understood that Plaintiff Santiago-Rivera could not work under stress after she informed him that there

was a lot of stress in her workplace and she preferred to work in a more relaxed area. DSUMF at ¶ 115-116[20]; Docket No. 49-11 at 131. Dr. Gómez therefore recommended that Plaintiff Santiago-Rivera not work under stress and not work consecutive night shifts. DSUMF at ¶ 117[21]; Docket No. 49-11 at 142. During his deposition, Dr. Gómez stated that, if HGMA did not comply with his recommendations regarding the reasonable accommodation, Plaintiff Santiago-Rivera could not work there. DSUMF at ¶ 118[22]; Docket No. 49-11 at

---

[20] Plaintiff Santiago-Rivera denied DSUMFs at ¶¶ 115-116. *See* Plaintiff Santiago-Rivera's Opposition to DSUMF at ¶¶ 115-116. In doing so, she relied on her deposition testimony whereby she represented that, at the time of her termination, she was able to perform the essential functions of her position and was on equal footing with her fellow nurses. *Id.* Nevertheless, these denials do not controvert Defendant HGMA's proposed facts at DSUMF at ¶¶ 115-116. Here, the proposed DSUMFs at ¶¶ 115-116 drive at what Plaintiff Santiago-Rivera informed Dr. Gómez and his impressions and recommendations regarding said information.

[21] Plaintiff Santiago-Rivera denied DSUMF at ¶ 117. *See* Plaintiff Santiago-Rivera's Opposition to DSUMF at ¶ 117. In her denial, Plaintiff Santiago-Rivera stresses that Dr. Gómez's recommendations were just that, recommendations. *Id.* Moreover, Plaintiff Santiago-Rivera argues that during his deposition, Dr. Gómez did not state that she could not or was not able to work. *Id.* These denials do not controvert the proposed fact at DSUMF at ¶ 117.

[22] Plaintiff Santiago-Rivera denied DSUMF at ¶ 118. *See* Plaintiff Santiago-

142.  That same day, Plaintiff Santiago-Rivera provided Colón with another medical certificate prepared by Dr. Gómez, stating that she was being treated for severe major depression. DSUMF at ¶ 82; Docket No. 49-9 at ¶ 11; Docket No. 49-1 at ¶ 35. Dr. Gómez's medical certificate recommended that Plaintiff Santiago-Rivera not work under stress and that she should not be assigned consecutive night shifts. DSUMF at ¶

Rivera's Opposition to DSUMF at ¶ 118. She avers that during his deposition testimony, Dr. Gómez did not state that she could not or was not able to work. *Id.* A look at Dr. Gómez testimony reveals that he was asked whether the recommendation for reasonable accommodation entailed that she could not work at all. *See* Docket No. 58-9 at 143 (lines 10-24). Dr. Gómez clarified that the recommendation did not entail that she could not work at all. *Id.* at 143 (lines 24-25) and 144 (lines 1-3). Dr. Gómez's deposition testimony—as relied upon by Plaintiff Santiago-Rivera—does not controvert the deposition testimony relied upon by Defendant HGMA in support of its DSUMF ¶ 118, *see* Docket No. 49-11 at 142 (lines 19-25), inasmuch as there, when asked if his recommendations entailed that if Defendant HGMA did not provide a stress free area and continued to require Plaintiff Santiago-Rivera to do consecutive night shifts, she could not work at HGMA, Dr. Gómez acknowledged that those had in fact been his recommendations. While cumbersome to distinguish, Dr. Gómez's deposition testimony as relied upon by Defendant HGMA shows that the circumstances under which Plaintiff Santiago-Rivera could not work were limited an not all encompassing as an assertion such as "could not work at all" would entail. The Court does not find Plaintiff Santiago-Rivera's denial to be responsive to the proposed fact at DSUMF at ¶ 118. The same is therefore admitted.

SANTIAGO-RIVERA v. HOSPITAL GENERAL
MENONITA DE AIBONITO, ET AL.

Page 31

82; Docket No. 49-9 at ¶ 11; Docket No. 49-1 at ¶ 35. This was
the first medical certificate which stated that Plaintiff
Santiago-Rivera could not work under stress. DSUMF at ¶ 83;
Docket No. 49-7 at 94.

On December 1, 2016, Colón and López met with Plaintiff
Santiago-Rivera to discuss the medical certificate dated
November 29, 2016. DSUMF at ¶ 85; Docket No. 49-9 at ¶ 11.
They clarified that HGMA did not have a nurse position that
met Dr. Gómez's recommendations, that is, a nurse position
that did not entail being exposed to stress and that did not
require consecutive night shifts. DSUMF at ¶ 85; Docket No.
49-9 at ¶ 11.

At the meeting, Colón gave Plaintiff Santiago-Rivera a
letter addressed to Dr. Gómez noting that there were no job
positions at the nursing department with low stress or that
did not require consecutive night shifts once per month.
DSUMF at ¶ 86; Docket No. 49-9 at ¶ 11. Plaintiff Santiago-
Rivera was asked, in view of Dr. Gómez's diagnosis of major
severe depression, to submit a medical certificate stating that
she was capable of working as a nurse. *See* DSUMF at ¶ 88-89;

SANTIAGO-RIVERA v. HOSPITAL GENERAL                    Page 32
MENONITA DE AIBONITO, ET AL.

Docket No. 49-9 at ¶ 11. Defendant HGMA required the
medical certificate to ensure that there was no risk to the
patient's health and safety. DSUMF at ¶ 88; Docket No. 49-9
at ¶ 11.

Plaintiff Santiago-Rivera agreed to obtain the medical
certificate. DSUMF at ¶ 91[23]; Docket No. 49-9 at ¶ 11.
However, she did not return to work after December 1, 2016,
and she did not provide the medical certificate to justify her
absences. DSUMF at ¶ 92; Docket No. 49-9 at ¶ 11. Plaintiff
Santiago-Rivera admits that she could not have worked
without the reasonable accommodation contained in Dr.
Gómez's medical certificate dated November 29, 2016.
DSUMF at ¶ 100; Docket No. 49-7 at 108-109.[24] On December

---

[23] Plaintiff Santiago-Rivera attempts to dispute the instant proposed fact
with a sworn statement signed by her. *See* Docket No. 58-1 at ¶ 4. Her
sworn statement states that she did not agree to deliver the medical
certificate to her psychiatrist. *Id.* She also cites to her deposition in support
of her denial, however, the deposition testimony cited to is not responsive
to the proposed fact at DSUMF ¶ 91. And since the Court has already
stricken Plaintiff Santiago-Rivera's sworn statement from the record, it
admits Defendant HGMA's proposed fact at DSUMF ¶ 91.

[24] Plaintiff Santiago-Rivera attempts to dispute the fact that she could not
perform the essential functions of her job without reasonable

19, 2016, Defendant HGMA sent a letter to Plaintiff Santiago-Rivera terminating her employment because she had not complied with the hospital's request. *See* DSUMF at ¶ 96; Docket No. 49-1 at ¶ 43; Docket No. 52-1 at 776.

## IV. Analysis

In her Second Amended Complaint, Plaintiff Santiago-Rivera alleges that Defendant HGMA discriminated against her on account of her disability, in violation of the ADA, by allowing Lasanta to harass her; failing to provide reasonable accommodation; suspending her and ultimately terminating her employment. Docket No. 26 at 11-14. She also alleges analogous claims under Puerto Rico Law. *Id.* The Court will first discuss whether Defendant HGMA is entitled to summary judgment on Plaintiff Santiago-Rivera's ADA claims and then on the Puerto Rico law claims.

---

accommodation. *See* Plaintiff Santiago-Rivera's Opposition to DSUMFs at ¶ 100. Nonetheless, the Court will deem admitted Defendant HGMA's proposed fact at DSUMF at ¶ 100 because Plaintiff Santiago-Rivera's denial is written in a lengthy argumentative style and is not responsive to the proposed fact.

1. *Plaintiff Santiago-Rivera's ADA Claims*

    a.  Disability Discrimination

"The ADA prohibits covered employers from discriminating against a qualified individual with a disability." *Colón-Fontánez v. Municipality of San Juan*, 660 F.3d 17, 32 (1st Cir. 2011) (citing 42 U.S.C. § 12112(a)). Disability discrimination cases pursuant to the ADA are analyzed under what has become known as the *McDonnell Douglas*[25] burden-shifting framework. *See Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 86-87 (1st Cir. 2012).  As part of this framework, a plaintiff is first tasked with satisfying a three-prong *prima facie* case. *Id.* at 86. Specifically, Plaintiff Santiago-Rivera is required to prove that she "(1) is disabled within the meaning of the ADA; (2) is qualified to perform the position's essential functions of [her] job with or without reasonable accommodation; and (3) was discharged or otherwise adversely affected in whole or in part because of her disability." *Id.* at 87.  If Plaintiff Santiago-Rivera satisfies all

---

[25] *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

SANTIAGO-RIVERA v. HOSPITAL GENERAL
MENONITA DE AIBONITO, ET AL.

Page 35

three prongs required to set forth a *prima facie* disability discrimination case, the burden then shifts to Defendant HGMA to "articulate a legitimate, non-discriminatory reason for its employment decision and to produce credible evidence to show that the reason advanced was the real reason." *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 105 (1st Cir. 2005). And if Defendant HGMA succeeds at articulating such a reason and proffers the required evidence, the burden shifts back to Plaintiff Santiago-Rivera to proffer evidence showing that Defendant HGMA's "non-discriminatory justification is mere pretext, cloaking discriminatory animus." *Id.*

Defendant HGMA does not dispute that Plaintiff Santiago-Rivera satisfies the first requirement of the *prima facie* case under the ADA. Docket No. 48 at 7; *see* 42 U.S.C § 12102(1)(A). However, Defendant HGMA does argue that Plaintiff Santiago-Rivera does not satisfy the second requirement, to wit, that she is a qualified individual under the ADA. Docket No. 48 at 9. Specifically, Defendant HGMA alleges that Plaintiff Santiago-Rivera cannot perform the essential functions of her job because she cannot work under

SANTIAGO-RIVERA v. HOSPITAL GENERAL
MENONITA DE AIBONITO, ET AL.

Page 36

stress or comply with HGMA's requirement that she take on consecutive night shifts at least once per month. *Id.*

The Court first notes that "[t]he qualified individual criterion and the reasonable accommodation requirement are interrelated." *Jones*, 696 F.3d at 88 (citing H. Perritt, Jr., *Americans With Disabilities Act Handbook* § 4.18 at 124 (3d ed. 1997) (quotation marks omitted). The ADA defines a qualified individual as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To prove that she is a qualified individual under the ADA, Plaintiff Santiago-Rivera bears the burden of showing "(1) that she possesses the requisite skill, experience, education and other job-related requirements for the position; and (2) that she is able to perform the essential functions of the position with or without reasonable accommodation." *Echevarría v. AstraZeneca Pharmaceutical LP*, 856 F.3d 119, 126 (1st Cir. 2017) (citing *Mulloy v. Acushnet Co.*, 460 F.3d 141, 147 (1st Cir. 2006)) (quotation marks omitted).

The parties do not argue that Plaintiff Santiago-Rivera meets the first prong of the qualified individual test. But to be sure, the Court clarifies that it is undisputed that Plaintiff Santiago-Rivera possessed the requisite skill, experience, and education required to be a nurse at the Intermediate Unit. The record shows that during her tenure as a nurse at HGMA, Plaintiff Santiago-Rivera met or exceeded her yearly evaluations prepared by her previous supervisor and Lasanta. *See* DSUMF at ¶¶ 37-38, 43; Docket No. 49-2 147-148, 150, 153-156.

Since Plaintiff Santiago-Rivera satisfies the first prong, the Court turns to the second prong of the qualified individual test, namely, whether Plaintiff Santiago-Rivera could perform the essential job function required of her position with or without reasonable accommodation. The Court will first address the essential functions of Plaintiff Santiago-Rivera's nurse position at the Intermediate Unit and then whether she could perform her job's essential function with or without reasonable accommodation.

### i.  Essential functions

Plaintiff Santiago-Rivera argues that working under stress and working consecutive night shifts are not essential functions of her job as a nurse at the Intermediate Unit. Docket No. 58 at 19. She stresses that the correct interpretation of the Intermediate Unit's job description is that she *could* be exposed to tense situations. *Id.* Regarding the night shifts, Plaintiff Santiago-Rivera contends that the job description does not require a nurse to work consecutive night shifts. *Id.*

An essential function under the ADA "is a fundamental job duty of the position at issue." *Jones*, 696 F.3d at 87 (1st Cir. 2012) (citing *Kvorjak v. Maine*, 259 F.3d 48, 55 (1st Cir. 2001)) (quotation marks omitted). It is worth noting that, "[t]he term does not include marginal tasks but may encompass individual or idiosyncratic characteristics of the job." *Id.* To determine if a function is essential, a court may consider the employer's judgment, and the position's written job description. *Id.*; *see also* 42 U.S.C. § 12111(8) (stating that consideration shall be given to an employer's judgment as to what functions of the job are essential). Also, this Court must

SANTIAGO-RIVERA v. HOSPITAL GENERAL
MENONITA DE AIBONITO, ET AL.

Page 39

give a significant degree of deference to, Defendant HMGA's business judgment as to the job's requirements. *See Jones*, 696 F.3d at 87 (citing *Jones v. Walgreen Co.*, 679 F.3d 9, 14 (1st Cir. 2012)).

Here, it is clear that working under stress is a fundamental job duty of a nurse in the Intermediate Unit. It is undisputed that the written job description for the nurse position at the Intermediate Unit expressly noted that Plaintiff Santiago-Rivera would be exposed to tense situations. DSUMF at ¶ 29; *see also Jones*, 696 F.3d at 87 (stating that a factor to be considered in determining an essential function is the position's written job description).

Furthermore, a nurse at the Intermediate Unit is required to take close care of his or her patients. *See* DSUMF at ¶ 30; Docket No. 49-2 at 95. At any given moment, a patient could suffer a health emergency that a nurse would have to be preprepared to attend. Such an emergency could be to provide cardiac resuscitation to a patient. *See* DSUMF at ¶ 30; Docket No. 49-2 at 98. An unannounced medical emergency, such as cardiac resuscitation, necessarily entails working

SANTIAGO-RIVERA v. HOSPITAL GENERAL
MENONITA DE AIBONITO, ET AL.

Page 40

under stress. Thus, since a nurse's duty at the Intermediate Unit required a nurse to perform certain indispensable tasks under pressure, the Court rules that working under tense situations is an essential function of the position.

Similarly, here, working consecutive night shifts once per month is also a fundamental job duty of a nurse at the Intermediate Unit. It is important to mention that the requirement to work consecutive night shifts is not explicitly noted as a job requirement on the Intermediate Unit's written job description. DSUMF at ¶ 35; Docket No. 52-1 at 37. However, the written job description does state that employees need to work both day and night shifts as required by the department. Docket No. 52-1 at 37. Thus, it is to be expected that Defendant HGMA could adopt a policy for its nurses at the Intermediate Unit requiring them to work consecutive night shift. *See* Docket No. 49-9 at ¶ 10.

Also, Defendant HGMA asserts that it needs to require its Intermediate Unit's nurses to work consecutive night shifts because it is essential for the proper administration of the shifts and schedules, and to ensure equal work distribution

between the nurses. Docket No. 48 at 10. The Court agrees with Defendant HGMA. A twenty-four-hour hospital, such as HGMA, needs to make sure that it has enough nurses for all the shifts at all medical units at all times. Notably, a hospital needs to ensure that it has enough nurses to cover all shifts, including night shifts. *See Laurin v. Providence Hosp.*, 150 F.3d 52, 59 (1st Cir. 1998) (stating that a twenty-four-hour hospital deserves deference in its decision to require nurses to work under shift rotation).

Here, the Court has not been swayed to second guess Defendant HGMA's business strategy whereby it requires its nurses to work consecutive night shifts. *Mulloy v. Acushnet Co.*, 460 F.3d 141, 147-148 (1st Cir. 2006) (noting that a court's inquiry into an essential function is not to second guess an employer's business judgment); *Laurin*, 150 F.3d at 59. On the contrary, it is tasked with awarding a great degree of deference to Defendant HGMA's business judgment. *See Jones*, 696 F.3d at 87; *see also Ward v. Massachusetts Health Research*, 209 F.3d 29, 34 (1st Cir. 2000) ("we generally give substantial weight to the employer's view of job requirements

in the absence of evidence of discriminatory animus."). Hence the Court holds that, the ability to work consecutive night shifts once a month is an essential function of the nurse position at the Intermediate Unit.

### ii.  Reasonable accommodation

Having held that working under stress and that consecutive night shifts once per month are part of an Intermediate Unit nurse's essential functions; the Court must now determine if Plaintiff Santiago-Rivera could perform the essential functions of her job with or without reasonable accommodation. The Court will first address whether Plaintiff Santiago-Rivera could perform the essential functions without reasonable accommodation.

As part of her efforts to state that she could work without reasonable accommodation, Plaintiff Santiago-Rivera first argues that a medical certificate stating that she was able to carry out her duties as a nurse at the Intermediate Unit was not necessary for her to comply with her job requirements. Docket No. 58 at 19. She also states that Dr. Gómez did not certify that she was not capable of working at the

Intermediate Unit. *Id.* at 19-20. And she also argues that she could have performed the essential functions of her job without reasonable accommodation, as she had performed her duties prior to her discharge and while already having been diagnosed with major depressive disorder. *Id.* at 20.

Plaintiff Santiago-Rivera's arguments are unavailing. First, under the ADA, an employer such as Defendant can require an employee to undergo a medical examination if it shows that the inquiry is "job-related and consistent with a business necessity." 42 U.S.C. § 12112(d)(4)(A); *see also López-López v. Robinson School*, 958 F.3d 96, 105 (1st Cir. 2020) ("This court has held that an employer may be justified in requiring a medical examination of a current employee so long as it is shown to be 'job-related and consistent with business necessity.'"). Here, HGMA's petition for Plaintiff Santiago-Rivera to undergo a medical examination is job-related and consistent with a business necessity. Defendant HGMA needed to know whether Plaintiff Santiago-Rivera could continue working as a nurse, for in view of Dr. Gómez's recommendation, she should not be exposed to stressful

SANTIAGO-RIVERA v. HOSPITAL GENERAL
MENONITA DE AIBONITO, ET AL.

Page 44

environments such as the one that she is exposed to as a nurse. It was reasonable for Defendant HGMA to have understood that if Plaintiff Santiago-Rivera did not return with a medical certificate, it meant that she could not work under stress and could not complete consecutive night shifts at least once per month.

Second, it is undisputed that Dr. Gómez clarified in his deposition that, if HGMA did not comply with his reasonable accommodation recommendation, Plaintiff Santiago-Rivera could not work there. DSUMF at ¶ 118; Docket No. 49-11 at 142. Plaintiff Santiago-Rivera also admitted this fact in her deposition. DSUMF at ¶ 100; Docket No. 49-7 at 108-109.  Thus, in light of these undisputed facts, the Court rules that Plaintiff Santiago-Rivera could not perform either of these two essential functions without reasonable accommodation.

The Court now turns to whether Plaintiff Santiago-Rivera could perform the essential functions with reasonable accommodation. Plaintiff Santiago-Rivera bears the "burden of showing the existence of reasonable accommodation."

SANTIAGO-RIVERA v. HOSPITAL GENERAL
MENONITA DE AIBONITO, ET AL.

Page 45

*Echevarría v. AstraZeneca Pharmaceutical LP*, 856 F.3d 119, 127 (1st Cir. 2017). To comply with that burden, she must first show that the proposed accommodation would enable her to perform the essential functions of her job. *See id.* Second, Plaintiff Santiago-Rivera is also tasked with showing that the reasonable accommodation is feasible for the employer under the circumstances. *See id.*

This Court has already ruled that being exposed to tense situations and working consecutive night shifts at least once per month are essential functions of a nurse at the Intermediate Unit at HGMA. Plaintiff Santiago-Rivera's petition for reasonable accommodation entails that she would not be performing two essential functions required by her job. Under these conditions, Defendant HGMA did not need to accommodate Santiago-Rivera because employers are not required to accommodate an employee "by foregoing an 'essential function' of the employment position." *See Laurin*, 150 F.3d at 56. Having determined that Plaintiff Santiago-Rivera does not satisfy the first prong of this test, the Court need not delve into whether it was feasible for Defendant

HGMA to implement and comply with the reasonable accommodation that was recommended by Dr. Gómez.

In sum, Plaintiff Santiago-Rivera failed to establish a *prima facie* disability discrimination case. Therefore, the Court need not continue with the *McDonnell Douglas* burden shifting analysis. Here, Plaintiff Santiago-Rivera specifically failed to satisfy the second prong of the *prima facie* disability discrimination test, namely, that she is a qualified individual under the ADA. Accordingly, the Court need not consider the third prong of the *prima facie* disability discrimination test, to wit, whether Plaintiff Santiago-Rivera was discharged or otherwise adversely affected in whole or in part because of her disability, and may therefore summarily dismiss Plaintiff Santiago-Rivera's disability discrimination claims under the ADA. *See Caez-Fermaint v. State Ins. Fund Corp.*, 286 F. Supp. 3d 302, 311 (D.P.R. 2017) (explaining that "[a] plaintiff's failure to meet any of the three *prima facie* elements is dispositive of the entire claim.").

b. Reasonable Accommodation Claim

Plaintiff Santiago-Rivera included a failure to

accommodate under the ADA claim in her Second Amended Complaint. *See* Docket No. 26. Defendant HGMA's Motion for Summary Judgment also moved for Plaintiff Santiago-Rivera's claim that HGMA failed to accommodate her under the ADA be summarily dismissed. *See* Docket No. 48 at 7-14, 19-23.

In order to succeed on a failure to accommodate claim, Plaintiff Santiago-Rivera should have furnished "evidence that she was disabled within the meaning of the ADA; that she was a qualified individual; and that her employer knew about her disability yet neglected to accommodate it." *See Trahan v. Mayfair Maine, LLC*, 957 F.3d 54, 64 (1st Cir. 2020). For the same reasons iterated above in this Court's discussion regarding reasonable accommodation, the Court finds that Plaintiff Santiago-Rivera has failed to set forth a failure to accommodate under the ADA claim.

c. Disability Harassment – Hostile Work Environment Claim

The Court next turns to Plaintiff Santiago-Rivera's disability harassment claim. Defendant HGMA claims that Plaintiff Santiago-Rivera's disability harassment claim should be summarily dismissed because she is not a qualified individual under the ADA. Docket No. 48 at 24. And because the record does not contain evidence establishing that Lasanta's alleged harassment towards Plaintiff Santiago-Rivera was based on her disability, as she was not aware of Plaintiff Santiago-Rivera's disability. *Id.* at 24-25.

The First Circuit has yet to decide whether a hostile work environment claim exists under the ADA.[26] It has, however, held that the caselaw construing the ADA is generally applicable to the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act"), as both statutes share similar liability standards. *Quiles-Quiles v. Henderson*, 439 F.3d 1, 5 (1st Cir. 2006). Thus, given that both statutes are similar, and that the

---

[26] The First Circuit in *Quiles-Quiles v. Henderson*, 439 F.3d 1, 5 n.1 (1st Cir. 2006), assumed for the purpose of that case that disability harassment was a viable theory of recovery under the ADA and the Rehabilitation Act. There, the First Circuit also noted that this theory of recovery has been accepted by other Circuits. *Id.*

First Circuit has held that both statutes are analogous, the Court will adopt the Rehabilitation Act's hostile work environment test to the ADA. *See id.*

Accordingly, Santiago-Rivera has to prove that: (1) she was disabled under the ADA, "(2) she was subjected to uninvited harassment, (3) her employer's conduct was based on her disability, (4) the conduct was so severe or pervasive that it altered the conditions of her work and created an abusive work environment, and (5) the harassment was objectively and subjectively offensive." *See McDonough v. Donahoe*, 673 F.3d 41, 46 (1st Cir. 2012) (stating the hostile work environment claim test under the Rehabilitation Act).

As explained earlier, it is uncontested that Plaintiff Santiago-Rivera is disabled under the ADA. However, even if the Court assumes that Santiago-Rivera meets the second requirement—that she suffered from uninvited harassment— her claim fails against Lasanta at the third requirement because the purported harassment was not based on her

disability.[27] The undisputed facts show that the alleged harassment by Lasanta does not present any signs of having been based on her disability. Plaintiff Santiago-Rivera has not shown that when Lasanta allegedly ignored her, hid some IV serums, accused her of talking ill about her, opted to socialize more with other coworkers, and reiterated her daily functions at the Intermediate Unit, such actions were based on her disability. *See* DSUMF at ¶ 46.

Further, Plaintiff Santiago-Rivera does not point to any evidence establishing that Lasanta knew about her depressive disorder while she was her supervisor. It is also undisputed that HGMA administrative personnel did not have access to the medical files at the employee clinic or CIMA, for the record establishes that both institutions are separate from HGMA. *See* DSUMF at ¶¶ 2-3. In that same vein, Plaintiff Santiago-Rivera has not shown that Lasanta had access to her

---

[27] *See Marini v. Costco Wholesale Corp.*, 64 F. Supp.3d 317, 326 (D. Conn. 2014) (acknowledging that "[a] hostile work environment claim requires more than just a hostile work environment—it requires proof that hostile acts were based on plaintiff's protected status (*e.g.,* his disability), rather than other reasons.").

medical files either. Likewise, Plaintiff Santiago-Rivera has not offered evidence establishing that Lasanta had access to her HGMA personnel file at the Human Resources Department, which contained medical certificates with diagnostic codes of her disability.

Similarly, Plaintiff Santiago-Rivera has not shown that Defendant HGMA's managerial staff, Colón and López, harassed her because of her disability when she worked at HGMA. Plaintiff Santiago-Rivera claims that Colón and López harassed her because they falsely accused her of abandoning her work, and of threatening to assault Lasanta. Docket No. 58 at 30-31. She also asserts that Lasanta, Colón, and López harassed her because they routinely summoned her with unfounded accusations. *Id.* at 31. Plaintiff Santiago-Rivera also alleges that she lost money because she was not assigned some workdays she claims she deserved. *Id.*

Plaintiff Santiago-Rivera's harassment claims against Colón and López fail for three reasons. First, Plaintiff Santiago-Rivera uses as evidence her Second Amended Complaint to support the vast majority of the aforementioned

allegations. *See* Docket No. 58 at 30-31. But the Court has already noted that, here, the Second Amended Complaint cannot be used to contest or establish facts for it is unverified. Second, it is undisputed that Plaintiff Santiago-Rivera abandoned her workplace on October 3, 2016. *See* DSUMF at ¶ 68; Docket No. 49-1 at ¶¶ 26-28. And third, although Plaintiff Santiago-Rivera's deposition states that Colón and López falsely accused her of threatening to assault Lasanta, and that Defendant HGMA did not assign her certain days that she claims she should have been assigned, *see* Docket No. 58 at 31, such conduct does not rise to the levels of severity or pervasiveness necessary to establish disability harassment. *See Colón-Fontánez v. Municipality of San Juan*, 660 F.3d 17, 43-45 (1st Cir. 2011) (dismissing an employee's harassment claim because the alleged acts did not rise to the necessary levels of severeness and pervasiveness). This conduct entails offhanded comments, or what appear to be isolated incidents, which do not amount to a hostile or abusive work environment. *See id.*

In short, Plaintiff Santiago-Rivera has failed to establish her disability harassment claim under the ADA. Therefore, her disability harassment claim is also summarily dismissed.

2.  *Plaintiff Santiago-Rivera's State Law Claims*

The Court will decline to exercise supplementary jurisdiction over Plaintiff Santiago-Rivera's state law claims, given that her ADA claims do not survive summary judgment.

**V. Conclusion**

For the reasons stated above, Defendant HGMA's Motion for Summary Judgment at Docket Number 48 is **GRANTED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th day of April 2021.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE